**QUANTUM CORPORATE FUNDING, LTD. v. B.H. BRYAN BLDG. CO.**

[175 N.C. App. 483 (2006)]

appeal, we cannot do so because the trial court entered no ruling on that motion.

Rule 10 of the North Carolina Rules of Appellate Procedure states:

> In order to preserve a question for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context. *It is also necessary for the complaining party to obtain a ruling upon the party's request, objection or motion.*

N.C.R. App. P. 10(b)(1) (emphasis added). Substitution in the event of death is not automatic and, accordingly, whether or not to allow substitution must be decided in the first instance by the trial court. We have no choice but to vacate the trial court's summary judgment order with respect to "Dr. Newell (and his estate)" and remand for further proceedings.

Vacated and remanded in part, and affirmed in part.

Judges HUNTER and HUDSON concur.

---

QUANTUM CORPORATE FUNDING, LTD., PLAINTIFF v. B.H. BRYAN
BUILDING COMPANY, INC., DEFENDANT

No. COA04-1554

(Filed 17 January 2006)

**1. Corporations— access to courts—no certificate of authority—no other activity other than filing suit**

The courts of North Carolina are open to a foreign corporation, without a certificate of authority, whose sole action in North Carolina is the filing of a lawsuit. Here, the trial court did not err by denying defendant's motion to dismiss plaintiff's action to enforce a New York judgment where defendant offered no evidence of plaintiff engaging in any other business activity in North Carolina.

**2. Civil Procedure— order denying motion—no findings—presumed findings not sufficient**

An order denying a motion to set aside a New York judgment, and granting plaintiff's motion to enforce the judgment, was remanded for further proceedings where the device of "presumed findings" was not sufficient to permit a fair review of the court's order.

Appeal by defendant from order entered 9 August 2004 by Judge Mark E. Klass in Iredell County Superior Court. Heard in the Court of Appeals 8 June 2005.

*The Law Office of James P. Laurie III, PLLC, by James P. Laurie III, for plaintiff-appellee.*

*Eisele, Ashburn, Greene & Chapman, PA, by Douglas G. Eisele, for defendant-appellant.*

GEER, Judge.

B.H. Bryan Building Company, Inc. ("Bryan Building") appeals an order of the trial court enforcing a foreign judgment from the State of New York in favor of Quantum Corporate Funding, Ltd. ("Quantum"). Bryan Building argues on appeal that the trial court erred by (1) refusing to set aside the foreign judgment due to a lack of personal jurisdiction and (2) denying its motion to dismiss based on Quantum's failure to obtain a certificate of authority to do business in this State. We hold that the trial court properly denied the motion to dismiss, but because we are unable to determine, given the record in this case, whether the trial court properly concluded that the New York judgment should be given full faith and credit, we remand for findings of fact and conclusions of law.

## Facts

Defendant Bryan Building was the general contractor on a project at the Mitchell Community College in Mooresville, North Carolina. As part of the project, defendant hired Cypress Alliance, Inc. ("Cypress") as a subcontractor. Cypress subsequently assigned its rights to payment from Bryan Building to plaintiff Quantum.

On 22 May 2003 and again on 4 June 2003, Quantum sent letters (called "estoppel certificates" by the parties) to Bryan Building, stating that Quantum was the assignee of payment for Cypress, setting out the amount that Cypress contended was due, and asking that

Bryan Building acknowledge "that the above invoice Amount(s) are correct and owing; that the work and or merchandise has been ordered from and completed by the captioned Client, and accepted by us; [and] that there are not now, nor will there be, any claims[,] setoffs, or defenses beyond 20% of the Invoice Amount(s) . . . ." The letters also specified that "New York law, jurisdiction and venue shall apply hereto." On the 22 May 2003 letter, Bryan Building's president struck out the amount stated as due ($9,536.90) and wrote in $2,762.40 before signing the letter below the words "Agreed & Accepted." Likewise, on the 4 June 2003 letter, he struck out the $12,001.08 amount indicated as due and substituted $9,000.00 before signing the letter.

On 28 August 2003, Quantum filed suit against Bryan Building in the Civil Court of New York seeking recovery from Bryan Building in the amount of $11,762.40. Quantum served Bryan Building by serving New York's Secretary of State on 23 September 2003. On 6 January 2004, the Civil Court of New York entered a default judgment in favor of Quantum for $12,360.34—the amount claimed by Quantum plus interest and court fees.

On 17 March 2004, Quantum sought to enforce the judgment in this State, pursuant to N.C. Gen. Stat. § 1C-1703 (2003), by filing a properly authenticated copy of the judgment. Bryan Building filed a verified Notice of Defenses to Enforcement of Foreign Judgment on 23 April 2004; a Motion to Set Aside Judgment and Execution on 22 June 2004; and a motion to dismiss on 9 July 2004, arguing that Quantum was not licensed to transact business in this State and, therefore, was not entitled to bring a civil action in the courts of this State. In response, Quantum filed a motion to enforce the foreign judgment on 9 July 2004.

After a hearing, the trial court entered an order on 9 August 2004, denying Bryan Building's motion to set aside the judgment and motion to dismiss and granting Quantum's motion to enforce the judgment. The court directed that Quantum could proceed with enforcement and execution of the foreign judgment in the amount of $12,360.34. Bryan Building filed a notice of appeal from the trial court's order on 7 September 2004.

I

[1] We first address Bryan Building's contention that the trial court erred in denying its motion to dismiss. The parties do not dispute that Quantum did not obtain a license to transact business in this State

under N.C. Gen. Stat. § 55-15-02 (2003) prior to filing this action. Bryan Building argues that Quantum's failure to do so precluded it from maintaining this action and that the trial court was, therefore, required to grant Bryan Building's motion to dismiss.

N.C. Gen. Stat. § 55-15-02(a) provides:

> No foreign corporation transacting business in this State without permission obtained through a certificate of authority under this Chapter or through domestication under prior acts shall be permitted to maintain any action or proceeding in any court of this State unless the foreign corporation has obtained a certificate of authority prior to trial.

Thus, this section "closes the courts of the state to suits maintained by corporations which should have but which have not obtained a certificate of authority." *Id.* official commentary.

Bryan Building does not argue that Quantum conducted business in this state other than by filing suit to enforce its foreign judgment. This appeal, therefore, presents the question whether filing a lawsuit, without more, brings a foreign corporation within the scope of N.C. Gen. Stat. § 55-15-02(a). Section 55-15-02(a)'s certificate of authority requirement applies only to a "foreign corporation *transacting business in this State.*" (Emphasis added.) This Court held in *Harold Lang Jewelers, Inc. v. Johnson*, 156 N.C. App. 187, 189-90, 576 S.E.2d 360, 361-62, *disc. review denied*, 357 N.C. 458, 585 S.E.2d 765 (2003), that we must look to N.C. Gen. Stat. § 55-15-01(b) (2003) in deciding whether a foreign corporation is transacting business within the meaning of § 55-15-02.

N.C. Gen. Stat. § 55-15-01(b) lists a number of activities that "shall not be considered to be transacting business in this State solely for the purposes of this Chapter." One such activity is "[m]*aintaining or defending any action or suit* or any administrative or arbitration proceeding, or effecting the settlement thereof or the settlement of claims or disputes . . . ." N.C. Gen. Stat. § 55-15-01(b)(1) (emphasis added). Thus, when we read §§ 55-15-01(b)(1) and 55-15-02 together, as we must, it leads to the conclusion that a foreign corporation need not obtain a certificate of authority in order to maintain an action or lawsuit so long as the company is not otherwise transacting business in this State. The courts of this State are open to a foreign corporation, without a certificate of authority, whose sole action in this State is the filing of a lawsuit. *See* N.C. Gen. Stat. § 55-15-01 official com-

mentary ("[A] corporation is not 'transacting business' solely because it resorts to the courts of the state to recover an indebtedness, enforce an obligation, . . . or pursue appellate remedies.").

Bryan Building relies upon *Kyle & Assocs., Inc. v. Mahan*, 161 N.C. App. 341, 587 S.E.2d 914 (2003), *aff'd per curiam*, 359 N.C. 176, 605 S.E.2d 142 (2004), and *Leasecomm Corp. v. Renaissance Auto Care, Inc.*, 122 N.C. App. 119, 468 S.E.2d 562 (1996). Neither case, however, addressed the precise issue presented by this case. In *Kyle*, the foreign corporation had obtained a certificate of authority prior to enforcement of its foreign judgment in North Carolina, but had not obtained the certificate prior to obtaining that judgment in South Carolina. 161 N.C. App. at 343, 587 S.E.2d at 915. Because this Court only held that the plaintiff was not required to obtain a certificate of authority prior to trial in the foreign jurisdiction, this Court was not required to address whether a company not otherwise transacting business in North Carolina was required to obtain a certificate of authority prior to seeking enforcement of a foreign judgment. Similarly, in *Leasecomm*, this Court was not required to address the issue posed by this case since there was no dispute that the foreign corporation in *Leasecomm* was conducting business apart from filing suit to enforce a foreign judgment. 122 N.C. App. at 120-21, 468 S.E.2d at 563-64.

Because the cases did not present the issue, neither opinion was required to consider N.C. Gen. Stat. § 55-15-01(b)(1) and neither did so. To the extent that either case suggests that a foreign corporation not otherwise transacting business in North Carolina must obtain a certificate of authority prior to suing to enforce a foreign judgment, that language constitutes *dicta* and is not controlling.

Accordingly, we hold that Quantum's action of enforcing its foreign judgment was not "transacting business" in North Carolina within the meaning of N.C. Gen. Stat. § 55-15-02. Because Bryan Building has not offered any evidence of Quantum's engaging in any other business activity in this State, the trial court did not err in denying Bryan Building's motion to dismiss.

## II

**[2]** We cannot, however, so readily decide Bryan Building's contention that the trial court erred in denying its motion to set aside the judgment and in granting Quantum's motion to enforce the judgment. The Uniform Enforcement of Foreign Judgments Act provides that a

judgment from another state, filed in accordance with the Act, "has the same effect and is subject to the same defenses as a judgment of this State and shall be enforced or satisfied in like manner." N.C. Gen. Stat. § 1C-1703(c). Once the foreign judgment has been filed and the judgment debtor has notice of the filing, then the judgment debtor has 30 days to file a motion for relief or notice of defenses. N.C. Gen. Stat. § 1C-1705(a) (2003). If the judgment debtor contests the foreign judgment, as Bryan Building did, then the judgment creditor may move for enforcement of the judgment, and the trial court should hold a hearing to determine if the judgment is "entitled to full faith and credit." *HCA Health Servs. of Tex., Inc. v. Reddix*, 151 N.C. App. 659, 663, 566 S.E.2d 754, 756 (2002).

The judgment creditor initially has the burden of proving that the judgment is entitled to full faith and credit, but " '[t]he introduction into evidence of a copy of the foreign judgment, authenticated pursuant to Rule 44 of the Rules of Civil Procedure, establishes a presumption that the judgment is entitled to full faith and credit.' " *Id.* (quoting *Lust v. Fountain of Life, Inc.*, 110 N.C. App. 298, 301, 429 S.E.2d 435, 437 (1993)). The judgment debtor may rebut this presumption by establishing any of the available defenses set forth in the North Carolina Foreign Money Judgments Recognition Act, N.C. Gen. Stat. §§ 1C-1800 to 1808 (2003). *Id.*

In this case, Quantum met its burden by filing the properly authenticated judgment. In order to rebut the presumption that the judgment was entitled to full faith and credit, Bryan Building relied upon the defense that New York lacked personal jurisdiction over it. *See* N.C. Gen. Stat. § 1C-1804(a)(2) ("A foreign judgment is not conclusive if . . . [t]he foreign court did not have personal jurisdiction over the defendant . . . ."). A foreign judgment is not denied enforcement for a lack of personal jurisdiction if "defendant, prior to the commencement of the proceedings, had agreed to submit to the jurisdiction of the foreign court with respect to the subject matter involved. . . ." N.C. Gen. Stat. § 1C-1805(a)(3).

In support of its argument that personal jurisdiction existed in New York, Quantum points to the estoppel certificates, arguing that (1) the certificates establish that Bryan Building consented to jurisdiction in New York within the meaning of N.C. Gen. Stat. § 1C-1805(a)(3), and (2) Bryan Building's forwarding of a counteroffer to a business in New York established sufficient minimum contacts within the state of New York to establish personal jurisdic-

tion. Quantum does not assert any additional basis for jurisdiction apart from the estoppel certificates.

As an initial matter, we address Bryan Building's challenge to the trial court's order settling the record on appeal and requiring that the estoppel certificates be included in the record on appeal. "A trial court's order settling the record on appeal is final and will not be reviewed on appeal. Review of an order settling the record on appeal is available, if at all, only by way of *certiorari.*" *Penland v. Harris,* 135 N.C. App. 359, 363, 520 S.E.2d 105, 108 (1999) (internal citation omitted). Because Bryan Building has not filed a petition for writ of certiorari, we do not consider defendant's assignment of error regarding the record on appeal. *Id.* We note, however, that there is no dispute that the estoppel certificates were submitted to the trial judge in support of Quantum's motion and in opposition to Bryan Building's motions.

Turning to the merits, we must first point out that the trial court did not make any findings of fact or conclusions of law in deciding the parties' motions. Rule 52(a)(2) of the Rules of Civil Procedure provides "[f]indings of fact and conclusions of law are necessary on decisions of any motion or order ex mero motu only when requested by a party and as provided by Rule 41(b)." When, as here, Rule 41(b) does not apply and no request for findings of fact was made, this Court presumes that the trial judge made those findings of fact necessary to support its judgment. *Corbin Russwin, Inc. v. Alexander's Hardware, Inc.,* 147 N.C. App. 722, 723, 556 S.E.2d 592, 595 (2001). On appeal, this Court "then determines whether there is competent evidence to support the presumed findings of fact." *Id.*

Bryan Building first argues that the record contains no evidence to support a finding of personal jurisdiction. We agree with Quantum that the trial court's order would be supported by a presumed finding that Quantum and Bryan Building entered into a contract, in the form of the estoppel certificates, which included a term providing for jurisdiction in New York. The question on appeal is whether such a presumed finding is supported by competent evidence.

Quantum recognizes that Bryan Building's alteration of those certificates constituted a counteroffer and then states with no citation to the record: "Upon receipt of the signed Estoppel Certificates sent by Bryan to Quantum in New York, Quantum accepted Bryan's counter offers." We have found no evidence in the record supporting Quantum's assertion that it accepted the counteroffers. In the

absence of acceptance of the counteroffers, there is no contract. *See Normile v. Miller*, 313 N.C. 98, 108, 326 S.E.2d 11, 18 (1985) (holding that a counteroffer requires the original offeror to either accept or reject the new offer in order to have a binding contract); *see also Metro. Steel Indus., Inc. v. Citnalta Constr. Corp.*, 302 A.D.2d 233, 233, 754 N.Y.S.2d 278, 279 (App. Div. 1st Dep't 2003) (holding that no contract existed where one party made an offer, and the other party returned it with changes, and the original offeror never formally accepted the counteroffer).

Quantum, however, argues that Bryan Building did in fact agree to jurisdiction in New York because when it altered the amount owed to Quantum, it did not alter the clause dealing with jurisdiction, thus in effect agreeing to this provision. This argument is misplaced. In order for a contract to arise, "the parties must assent to the same thing in the same sense, and their minds must meet as to all the terms. If any portion of the proposed terms is not settled, or no mode agreed on by which they may be settled, there is no agreement." *Gregory v. Perdue, Inc.*, 47 N.C. App. 655, 657, 267 S.E.2d 584, 586 (1980). Phrased differently, "in order that there may be a valid and enforceable contract between parties, there must be a meeting of the minds of the contracting parties upon all essential terms and conditions of the contract." *O'Grady v. First Union Nat'l Bank*, 296 N.C. 212, 221, 250 S.E.2d 587, 594 (1978). A party cannot seek to enforce one essential term when it has not agreed to other essential terms. *See Boyce v. McMahan*, 285 N.C. 730, 734, 208 S.E.2d 692, 695 (1974) ("If any portion of the proposed terms is not settled, or no mode agreed on by which they may be settled, there is no agreement."). Thus, there must have been acceptance of Bryan Building's counteroffer for an agreement regarding jurisdiction to exist.

Alternatively, however, Quantum claims that personal jurisdiction existed in New York simply because Bryan Building sent a counteroffer to Quantum in the State of New York, thus availing itself of the privilege of transacting business in that state. Quantum cites only *Hanson v. Denckla*, 357 U.S. 235, 253, 2 L. Ed. 2d 1283, 1298, 78 S. Ct. 1228, 1240 (1958) (holding that personal jurisdiction over a party exists when that party does some "act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws"). It cites no authority—nor have we found any—suggesting that a counteroffer mailed to another state, without any other activity in that state, is sufficient to support a finding of minimum contacts. The

trial court's order enforcing the foreign judgment thus must depend on a finding that the estoppel certificates constituted a contract between the parties.

We are left with the following conundrum. On the one hand, Bryan Building argues generally that the record contains no evidence to support a finding of personal jurisdiction in New York. Because we can find no evidence in the record before us that Quantum accepted Bryan Building's counteroffer, we have to agree with this general proposition. On the other hand, Bryan Building has not made any specific argument regarding whether its counteroffer was accepted. If we simply reverse the trial court without requiring further proceedings, we risk creating an appeal for Bryan Building on an issue that may not have been in dispute below. *See Viar v. N.C. Dep't of Transp.*, 359 N.C. 400, 402, 610 S.E.2d 360, 361 (2005) (per curiam) ("It is not the role of the appellate courts, however, to create an appeal for an appellant" in part because "an appellee [may be] left without notice of the basis upon which an appellate court might rule."). We have no transcript of the hearing or findings of fact to indicate what may or may not have been argued or conceded.

We note that in connection with its challenge to the order settling the record on appeal, Bryan Building argued that the estoppel certificates should have been excluded as unenforceable under N.C. Gen. Stat. § 22B-3 (2003), which provides:

> Except as otherwise provided in this section, any provision in a contract entered into in North Carolina that requires the prosecution of any action or the arbitration of any dispute that arises from the contract to be instituted or heard in another state is against public policy and is void and unenforceable. This prohibition shall not apply to non-consumer loan transactions or to any action or arbitration of a dispute that is commenced in another state pursuant to a forum selection provision with the consent of all parties to the contract at the time that the dispute arises.

This argument presumes not only that there was a contract, but that it was entered into in North Carolina. Given the state of the record, any finding of fact one way or another regarding where the contract was entered into is not supported by evidence.

If we reverse the order for lack of evidence to support a pre-sumed finding, Bryan Building unfairly prevails based on an argument that it did not specifically make, but if we uphold the or-

der, Quantum prevails despite an apparent lack of evidence to support the order and despite Bryan Building's general objection regarding the sufficiency of the evidence. Further, we have no basis for determining what factual or legal theory the trial court may have embraced in finding personal jurisdiction. It may have concluded that a counteroffer, standing alone, is sufficient—a theory that we have rejected.

Under the circumstances of this case and given the arguments and record on appeal (including the lack of any transcript from the hearing), "we must vacate the order and remand for further proceedings, including an evidentiary hearing if necessary, and a new order with appropriate findings of fact and conclusions of law." *HCA Health Servs.*, 151 N.C. App. at 667, 566 S.E.2d at 758. We recognize that in *HCA*, the parties requested findings of fact, but because, in this case, the device of "presumed findings" is not sufficient to permit a fair review of the court's order, we find ourselves in an identical situation to that of *HCA*.

Vacated and remanded.

Judges CALABRIA and ELMORE concur.